CLERK
US DISTRICT &
BANKRUPTICY COURTS
2016 MAY 18  A 8: 38

RECEIVED

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RANJITH KEERIKKATTIL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-00857-RBW |
| | ) | |
| RAYMOND STARGEL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

### PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COMES NOW Plaintiff Ranjith Keerikkattil in the above-captioned case, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure move the Court for a preliminary injunction against Defendants. In support thereof, Plaintiff state as follows:

On March 6, 2016, Plaintiff filed a Complaint, alleging, pursuant to 42 U.S.C. § 1983, that the Plaintiff is entitled to relief from this Court for violations of his rights under the First and Fifth Amendments to the United States Constitution.

Plaintiffs seek a preliminary injunction enjoining Defendants, its officers, agents, affiliates, servants, employees, assigns, those persons in active concert or participation with Defendants, and all other persons within the scope of Federal Rule of Civil Procedure 65 from violating his First and Fifth Amendment Rights under the United States Constitution.

Federal Rule of Civil Procedure 65 provides for the issuance of a preliminary injunction under circumstances such as those that exist in the present case.

RECEIVED
Mail Room

MAY 1 9 2016

Angela D. Caesar, Clerk of Court
U.S. District Court. District of Columbia

In support of this motion, Plaintiff submits a Memorandum of Law, addressing all necessary elements for the entry of a preliminary injunction

WHEREFORE, for the foregoing reasons, and for those set forth in Plaintiffs' supporting Memorandum of Law, Plaintiff respectfully moves that the Court enter a preliminary injunction enjoining Defendants, its officers, agents, affiliates, servants, employees, assigns, those persons in active concert or participation with Defendants, and all other persons within the scope of Federal Rule of Civil Procedure 65 from:

1. Arresting and prosecuting the Plaintiff under D.C. Code § 22-3133 for protected First Amendment speech including but not limited to (i) internet postings (ii) e-mails and (iii) text messages.

2. Arresting and prosecuting the Plaintiff under D.C. Code § 22-3133 for filing any lawsuit against Stacy Sawin in any Court.

3. Arresting and prosecuting the Plaintiff under D.C. Code § 22-3133 for petitioning any government agency relating to Stacy Sawin.

4. Continuing Defendants' misdemeanor prosecution of Plaintiff in DC Superior Court (2015-CMD-017652).

Dated: May 18, 2016                    Respectfully submitted,


Ranjith Keerikkattil
4707 Grand Bend Drive
Catonsville, MD 21228
rkeerikkattil@gmail.com
Tel: (443) 690-1031


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of May 2016, a copy of Plaintiff's Motion for
Preliminary Injunction as well as Memorandum of Law in support thereof was served by
First Class Mail Postage Prepaid to:


Jason T. Cohen
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 252-2523
Fax: (202) 252-2599
Email: jason.cohen@usdoj.gov
*Attorney for Defendants Channing Phillips and Kristina Wolf*

George Valentine
Deputy Attorney General
Civil Litigation Division
District of Columbia Office of Attorney General
441 4th Street, N.W. 6th Fl South
Washington, D.C. 20001
Email: george.valentine@dc.gov
*Attorney for Defendants Raymond Stargel, Cathy Lanier and District of Columbia*

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RANJITH KEERIKKATTIL    )
                     )
      Plaintiff,        )
                     )
      v.              )      Case No. 16-CV-00857-RBW
                     )
RAYMOND STARGEL, et al.,    )
                     )
      Defendants.    )

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COMES NOW Plaintiff Ranjith Keerikkattil submits the following Memorandum

of Law in support of his Motion for Preliminary Injunction against Defendants.

Dated: May 18, 2016               Respectfully submitted,

                                       _____

                                       Ranjith Keerikkattil
                                       4707 Grand Bend Drive
                                       Catonsville, MD 21228
                                       rkeerikkattil@gmail.com
                                       Tel: (443) 690-1031

i

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 1

ARGUMENT .................................................................................................................. 3

   I. Keerikkattil's alleged conduct that forms the basis for stalking charge is protected under the First Amendment ................................................................................................ 3

      1. Keerikkattil's alleged blaming of Stacy Sawin for his unlawful termination is protected speech under the First Amendment ................................................................ 5

      2. Keerikkattil's alleged threat to sue Stacy Sawin for causing his unlawful termination is protected under the First Amendment. ................................................... 7

      3. Keerikkattil's alleged threat to "fuck up" Stacy Sawin's life by writing a letter to the Internal Revenue Service (IRS) is protected under the First Amendment. ........... 8

      4. Keerikkattil's alleged attempt to interview Andrew Sawin is protected under the First Amendment. ........................................................................................................ 9

   II. Defendants failed to provide any evidence that the alleged stalking course of conduct occurred within the District of Columbia ....................................................... 11

   III. District of Columbia's unconstitutionally vague and overbroad stalking statute violated Keerikkattil's rights under the First Amendment and Due Process Clause of the Fifth Amendment ..................................................................................................... 12

      1. The portion of D.C. Code § 22-3133 charged does not provide Keerikkattil with fair notice of what conduct is prohibited. .................................................................. 13

      2. The portion of D.C. Code § 22-3133 charged by Defendants fail to establish standards that are sufficient to guard against arbitrary enforcement. ........................ 15

   IV. The Court should issue a preliminary injunction enjoining the Defendants from enforcing D.C. Code § 22-3133 against Keerikkattil .................................................. 15

      1. Keerikkattil satisfies the requirements for the issuance of a preliminary injunction ...................................................................................................................................... 15

         A. Keerikkattil is likely to succeed on the merits ................................................. 16

         B. Keerikkattil will suffer irreparable harm if the injunction is not granted. ....... 17

         C. The Balance of Equities Tip Heavily in Favor of Granting the Requested Relief. ..................................................................................................................... 18

D. Granting the Preliminary Injunction is in the Public Interest. ........................ 19

V. *Younger* Abstention does not restrict the Court's authority to issue a Preliminary Injunction .................................................................................................................... 19

    1. Bad Faith and Harassment Exception to *Younger* ................................................. 21

    2. Patently Unconstitutional Statutes Exception to *Younger* ..................................... 22

    3. Inadequate State Forum Exception to *Younger* ...................................................... 22

CONCLUSION ............................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014)..........................................................16

*Abbott v. United States,* 562 US 8, 178 L. Ed. 2d 348, 131 S.Ct. 18, 31 (2010).................15

*Boos v. Barry*, 485 U.S. 312, 108 S. Ct. 1157, 99 L. Ed. 2d 333 (1988) ..............................4

*Brandenburg v. Ohio*, 395 U.S. 444, 23 L. Ed. 2d 430, 89 S. Ct. 1827 (1969) .....................9

*Brown v. Entm't Merch. Ass'n*, 131 S. Ct. 2729, 180 L. Ed. 2d 708 (2011). ..........................4

*Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed.
   2d 642 (1972).................................................................................................................7

*Chaplinsky v. New Hampshire*, 315 U.S. 568, 86 L. Ed. 1031, 62 S. Ct. 766 (1942) ..........8

*City of Chicago v. Morales*, 527 US 41, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999) ..........12

*Co. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed.
   2d 483 (1976) ...............................................................................................................19

*Coates v. City of Cincinnati*, 402 US 611, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971).........14

*Cohen v. California*, 403 U.S. 15, 29 L. Ed. 2d 284, 91 S. Ct. 1780 (1971) .........................9

*Crosby* v. *National Foreign Trade Council*, 530 U.S. 363, 120 S. Ct. 2288, 147 L. Ed. 2d
   352 (2000) ....................................................................................................................12

*Doe v. University of Michigan*, 721 F. Supp. 852 (E.D. Mich. 1989)....................................14

*Dombrowski v. Pfister*, 380 U.S. 479, 14 L. Ed. 2d 22, 85 S. Ct. 1116 (1965) ...................13

*Elam Constr. v. Reg. Transp. Dist.*, 129 F.3d 1343 (10th Cir.1997).....................................19

*Elrod v. Burns*, 427 US 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)..................................17

*First National Bank of Boston v. Bellotti*, 435 US 765, 98 S. Ct. 1407, 55 L. Ed. 2d 707
   (1978) .......................................................................................................................6, 19

*Gade* v. *National Solid Wastes Management Ass'n,* 505 U.S. 88, 112 S. Ct. 2374, 120 L.
   Ed. 2d 73 (1992)...........................................................................................................12

*Gibbons* v. *Ogden*, 22 U.S. 1, 9 Wheat. 1, 6 L. Ed. 23 (1824) .............................................12

*Gibson v. Berryhill*, 411 U.S. 564, 578-79, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973) 20, 23

*Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013) ...............................................................18

*Hess v. Indiana*, 414 US 105, 94 S. Ct. 326, 38 L. Ed. 2d 303 (1973) ...................................9

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988)....4

*Hynes v. Mayor and Council of Borough of Oradell*, 426 U.S. 610, 96 S.Ct. 1755, 1760,
   48 L.Ed.2d 243 (1976) .................................................................................................13

*Kolender v. Lawson*, 461 US 352 , 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983) .............13, 15

*McBoyle v. United States*, 283 US 25, 51 S. Ct. 340, 75 L. Ed. 816 (1931).......................13

*McDonald v. Smith*, 472 U.S. 479, 105 S. Ct. 2787, 86 L. Ed. 2d 384 (1985) .....................7

*Mitchell v. Cuomo*, 748 F.2d 804 (2d Cir. 1984) .................................................................17

*New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) ....4

*Ohio Bureau of Emp't Servs. v. Hodory*, 431 US 471, 97 S. Ct. 1898, 52 L. Ed. 2d 513
   (1977)............................................................................................................................20

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187 (3d Cir. 1990) .............18

*People v Golb,* 23 NY3d 455 (2014)..............................................................................16, 22

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996)
   ......................................................................................................................................19

*R. A. V. v. St. Paul*, 505 US 377, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992) .......................... 9

*Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 117 S. Ct. 2329, 138 L. Ed. 2d 874
 (1997) ............................................................................................................................................ 4

*RoDa Drilling Co. v. Siegal,* 552 F.3d 1203 (10th Cir.2009) .............................................. 18

*Skilling v. United States*, 130 S. Ct. 2896, 561 US 358, 177 L. Ed. 2d 619 (2010) ........... 13

*Snyder v. Phelps*, 131 S.Ct. 1207, 179 L. Ed. 2d 172 (2011) ............................................... 4

*State v. Bryan*, 910 P.2d 212 (Kan. 1996) ................................................................... 14, 22

*United States v. Cabrales,* 524 US 1, 118 S. Ct. 1772, 141 L. Ed. 2d 1 (1998) ................. 11

*United States v. Coia*, 719 F.2d 1120 (11th Cir. 1983) ....................................................... 23

*United States v. Lanier*, 520 US 259, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997) ............. 13

*United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 120 S. Ct. 1878, 146 L. Ed. 2d
 865 (2000). ................................................................................................................................. 6

*Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061 (10th Cir. 2001) ......................... 17

*Virginia v. Black*, 538 US 343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) ......................... 9

*Vives v. City of New York*, 305 F.Supp.2d 289 (S.D.N.Y. 2003) ......................................... 14

*Watson v. Buck*, 313 U.S. 387, 61 S. Ct. 962, 85 L. Ed. 1416 (1941) ................................. 20

*Watts v. United States*, 394 U.S. 705, 22 L. Ed. 2d 664, 89 S. Ct. 1399 (1969) .................... 9

*Winter v. Natural Resources Defense Council*, 555 US 7, 129 S. Ct. 365, 172 L. Ed. 2d
 249 (2008) ................................................................................................................................ 16

*Younger v. Harris*, 401 US 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) ...................... *passim*

**Statutes**

18 U.S. Code § 2261A ............................................................................................................ 12

D.C. Code § 22-3133…………………………………………………………………. *passim*

Penal Law § 240.30(1) ..................................................................................................... 14, 16

**Constitutional Provisions**

Art. III, Section 2, cl. 3. ........................................................................................................ 11

Art. VI, cl. 2 ........................................................................................................................... 12

U.S. Const. amend. I ................................................................................................................ 3

U.S. Const. amend. V ............................................................................................................. 12

**Other Authorities**

11A Wright & Miller, Fed. Prac. & Proc. (2d ed. 2004) ....................................................... 17

**PRELIMINARY STATEMENT**

Plaintiff Ranjith Keerikkattil ("Keerikkattil") seeks a preliminary injunction to enjoin Defendants Raymond Stargel, Cathy Lanier, Channing Phillips, Kristina Wolf and District of Columbia from arresting and prosecuting him for exercising his clearly established First Amendment Rights. The Defendants have invoked D.C. Code § 22-3133 to criminally prosecute Keerikkattil's First Amendment protected speech and he fears that the Defendants will continue to invoke D.C. Code § 22-3133 in future to chill his First Amendment protected speech unless enjoined by this Court.

**STATEMENT OF FACTS**

Keerikkattil and Stacy Sawin ("Ms. Sawin") were formerly colleagues employed with Deloitte Consulting LLP, a subsidiary of Deloitte LLP  ("Deloitte"). Keerikkattil and Ms. Sawin met for the first time on March 4, 2015 at a Deloitte sponsored networking event. Ms. Sawin sent Keerikkattil a follow-up email the next day stating "it was nice meeting with you yesterday" and thanked him for meeting with her (Ex. A).

On or around April 14, 2015, Ms. Sawin gets fired from her project with United States Bureau of Engraving & Printing ("BEP"). On April 14, 2015, Ms. Sawin contacts Keerikkattil via Instant Message ("IM") requesting help in finding a project and with other opportunities at Deloitte. The IM chat log is attached as Ex. B.

Keerikkattil at the time was working on a project titled FPS at Deloitte. When an opportunity came up within the project, Keerikkattil suggested Ms. Sawin's name to the Project Director, Ritesh Verma. Mr. Verma made the decision to hire Ms. Sawin on to the project (Ex. C).

1

On or around May 30, 2015, Keerikkattil received a series of communication from Ms. Sawin that hinted that the Respondent was interested in a romantic relationship with her. Out of an abundance of caution, Keerikkattil sent her a Cease and Desist Letter, which is attached as Ex. D.

Believing that her career already tarnished by her BEP firing could be in jeopardy, Ms. Sawin made multiple false and defamatory statements about Keerikkattil to Deloitte Human Resources ("HR") that resulted in him being unlawfully terminated from his employment with Deloitte. Ms. Sawin also enlisted her father Andrew Sawin ("Mr. Sawin") to dig up dirt on Keerikkattil.

After his unlawful termination from Deloitte, Keerikkattil sends Ms. Sawin a letter notifying her of imminent litigation and demands that responsive documents in her possession and control be preserved. Keerikkattil also sends Ms. Sawin a copy of the lawsuit against her. In addition Keerikkattil sends a farewell letter to his former colleagues at Deloitte regarding his unlawful termination, Ms. Sawin's role in causing his unlawful termination, her violations of Deloitte's Code of Ethics & Professional Conduct and Deloitte's Title VII violations.

In order to retaliate against Keerikkattil for threatening to sue her, to stop Keerikkattil from investigation her as well as Mr. Sawin's role in causing his unlawful termination and to enhance her standing at Deloitte, Stacy Sawin walks into DC Metropolitan Police Department ("MPD") First District and files a Police Report with Raymond Alan Stargel, a Grade II MPD Detective, claiming that Keerikkattil was stalking her. Ms. Sawin's statement to MPD is attached as Ex. E. Based on Ms. Sawin's

statement Defendant Stargel obtains a misdemeanor arrest warrant against Keerikkattil. The arrest warrant affidavit is attached as Ex. F

Keerikkattil became aware of the misdemeanor arrest warrant about two months later in December 2015. After confirming the warrant by contacting Defendant Stargel and determined to challenge Stacy Sawin's frivolous stalking claim, Keerikkattil voluntarily appeared at the Superior Court for the District of Columbia on December 19, 2015 for arraignment. During arraignment Keerikkattil was informed that the United States Attorney for the District of Columbia has decided to initiate criminal prosecution against him for a single count of misdemeanor stalking in violation of D.C. Code § 22-3133(a)(1). The information charging Keerikkattil is attached as Ex. G. Keerikkattil was released on self-recognizance immediately after arraignment considering the petty nature of the charge.

Based on his experience litigating First Amendment cases as well as information from the arrest warrant affidavit, charging information and discovery provided by the Government, it became evidently clear to Keerikkattil that he was being criminally prosecuted for his First Amendment protected speech necessitating a federal action to vindicate his constitutional rights.

## ARGUMENT

### I. Keerikkattil's alleged conduct that forms the basis for stalking charge is protected under the First Amendment

The First Amendment, applicable to the states through the Fourteenth Amendment, states that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. The Supreme Court has consistently classified

emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious or public concern. This is because "in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide 'adequate 'breathing space' to the freedoms protected by the First Amendment.'" *See Boos v. Barry*, 485 U.S. 312, 322, 108 S. Ct. 1157, 99 L. Ed. 2d 333 (1988) (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988)); *See also New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964); *Snyder v. Phelps*, 131 S.Ct. 1207, 1219, 179 L. Ed. 2d 172 (2011) (Because the emotionally distressing "speech was at a public place on a matter of public concern, that speech is entitled to 'special protection' under the First Amendment. Such speech cannot be restricted simply because it is upsetting or arouses contempt").

Online speech is equally protected under the First Amendment as there is "no basis for qualifying the level of First Amendment scrutiny that should be applied" to online speech. *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997). Indeed "whatever the challenges of applying the Constitution to ever-advancing technology, basic principles of freedom of speech and press, like the First Amendment's command, do not vary when a new and different medium for communication appears." *Brown v. Entm't Merch. Ass'n*, 131 S. Ct. 2729, 2733, 180 L. Ed. 2d 708 (2011).

The single misdemeanor charge against Keerikkattil is based on the following four incidents that according to the Defendants allegedly occurred between 06/01/2015 and 10/27/2015:

1. Keerikkattil blamed Stacy Sawin for his unlawful termination from Deloitte
2. Keerikkattil threatened to sue Stacy Sawin

3. Keerikkattil threatened to "fuck up" Stacy Sawin's life by writing a letter to the IRS

4. Keerikkattil attempted to interview Andrew Sawin

## 1. Keerikkattil's alleged blaming of Stacy Sawin for his unlawful termination is protected speech under the First Amendment

Defendants Phillips and Wolf allege that Keerikkattil stalked Stacy Sawin by blaming her for causing his unlawful termination. In the arrest warrant affidavit, Defendant Stargel explicitly states that Keerikkattil "blames her [Stacy Sawin] for him losing his job" (Ex. F, p.2). Defendants makes this allegation based on an e-mail that it claims was sent by Keerikkattil to his former colleagues at Deloitte where he states Stacy Sawin's role in his unlawful termination.

First of all, Ms. Sawin was indeed responsible for Keerikkattil's termination from his employment with Deloitte. In fact Deloitte's Assistant General Counsel confirmed this in an e-mail to Keerikkattil (Ex. H). More importantly, the contents of the e-mail sent by Keerikkattil to Deloitte community are protected under the First Amendment. It is clearly evident from the e-mail that its purpose was to inform the Deloitte community about Keerikkattil's unlawful termination, Stacy Sawin's role in causing Keerikkattil's unlawful termination, Stacy Sawin's violations of Deloitte's Code of Ethics & Professional Conduct and Deloitte's Title VII violations. Violations of Deloitte's Code of Ethics & Professional Conduct and Deloitte's Tile VII violations are a " matter of public concern" for the Deloitte community and "is entitled to 'special protection' under the First Amendment" even if the contents are "emotionally distressing" for Stacy Sawin.

5

Just because Stacy Sawin might be alarmed or annoyed by her Deloitte colleagues knowing that she caused Keerikkattil's termination does not permit the government to impose a content-based restriction on protected speech. A content-based restriction on protected speech must survive strict scrutiny. See *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813, 120 S. Ct. 1878, 146 L. Ed. 2d 865 (2000). In determining whether a statute is content-neutral, one must determine whether "the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989). To survive strict scrutiny, the Government has the burden of showing that a content-based restriction "is necessary to serve a compelling state interest." *First Nat'l Bank v. Bellotti,* 435 U.S. 765, 98 S. Ct. 1407, 55 L. Ed. 2d 707 (1978).

The Government's compelling interest is in protecting individuals from emotional distress sustained through an interactive computer service. However, the Supreme Court's decision in *Playboy Entertainment Group*, 529 U.S. at 813, underscores the fact that the Government's interest is not a compelling one: Where the designed benefit of a content-based speech restriction is to shield the sensibilities of listeners, the general rule is that the right of expression prevails, even where no less restrictive alternative exists. For instance, in *United States v. Stevens*, the Supreme Court affirmed the Third Circuit's decision holding that a content-based restriction of protected speech -- i.e. a federal statute that criminalized the intentional creation, sale or possession of a depiction of animal cruelty -- did not serve a compelling state interest on the basis that these types of content-based restrictions of protected speech are presumptively invalid. 130 S.Ct. 1577, 1584, 176 L. Ed. 2d 435 (2010). Because the

Government's interest in criminalizing speech that inflicts emotional distress is not a compelling one, the statute does not survive strict scrutiny and hence violates Keerikkattil's First Amendment Rights.

## 2. Keerikkattil's alleged threat to sue Stacy Sawin for causing his unlawful termination is protected under the First Amendment.

Defendants allege that Keerikkattil stalked Stacy Sawin by threatening to sue her. Specifically, Defendant Stargel in his arrest warrant affidavit states Keerikkattil "threatened the complainant [Stacy Sawin] with a lawsuit" (Ex. F, p.2). According to Government's discovery documents, Keerikkattil sent Stacy Sawin a Litigation Hold Notice and a Complaint for Civil Action in Arlington County Circuit Court and as a result Stacy Sawin was alarmed, annoyed and suffered emotional distress.

Keerikkattil might be holding the dubious distinction as the only person to be criminally prosecuted for initiating a legal action in Court. If that were the case, the worst serial stalker in the District of Columbia would be Defendant Channing Phillips who initiates thousands of legal actions every year including many frivolous ones like the prosecution of Keerikkattil. In addition, threatening to sue and filing suit in a federal or state court is conduct protected under the First Amendment. "The right to petition is cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482, 105 S. Ct. 2787, 86 L. Ed. 2d 384 (1985). The right "extends to [petitioning] all departments of the Government," including administrative agencies and courts. *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972).

7

Therefore, criminal prosecution against Keerikkattil for threatening to sue Stacy Sawin violates his First Amendment Rights as well as his Right to Petition the Courts and hence should be enjoined.

3. Keerikkattil's alleged threat to "fuck up" Stacy Sawin's life by writing a letter to the Internal Revenue Service (IRS) is protected under the First Amendment.

In the Police Report filed by Stacy Sawin to Defendant Stargel, she alleges that Keerikkattil threatened to "fuck up" her life by "writing a letter to IRS". When Stargel wrote up his arrest warrant affidavit, he intentionally removed the "writing a letter to IRS" stating that Keerikkattil threatened to "fuck up" Stacy Sawin's life, to improve his chances of getting his frivolous arrest warrant approved.

Both "fuck up by writing a letter to IRS" and "fuck up" are protected speech under the First Amendment. As the letter to the IRS produced by the Government shows, Keerikkattil merely requests IRS Commissioner to launch an investigation into the alleged firing of Stacy Sawin from the United States Bureau of Engraving and Printing (BEP). The letter contains no threats what so ever. Petitioning a government agency such as IRS is akin to petitioning the courts and as stated above is conduct protected under the First Amendment and Right to Petition.

First Amendment rights are not absolute. A state may punish words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 86 L. Ed. 1031, 62 S. Ct. 766 (1942). Both "fighting words" -- words that are likely to provoke a violent reaction when heard by an ordinary citizen -- and "true threats" may be proscribed without offending the First Amendment. *See Cohen v. California*, 403 U.S. 15, 20, 29 L. Ed. 2d 284, 91 S. Ct. 1780

(1971) (fighting words); *Watts v. United States*, 394 U.S. 705, 708, 22 L. Ed. 2d 664, 89 S. Ct. 1399 (1969) (true threats). See also *R. A. V. v. St. Paul*, 505 US 377, 388, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992); *Brandenburg v. Ohio*, 395 U.S. 444, 447, 23 L. Ed. 2d 430, 89 S. Ct. 1827 (1969). " 'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 US 343, 123 S. Ct. 1536, 1548, 155 L. Ed. 2d 535 (2003) (citing *Watts*, 394 U.S. at 708 ("political hyperbole" does not constitute a true threat)).

Any variants of "fuck" are insufficient by themselves to constitute constitutionally unprotected "fighting words". See, e.g., *Hess v. Indiana*, 414 US 105, 107, 94 S. Ct. 326, 38 L. Ed. 2d 303 (1973) (holding that yelling, "We'll take the fucking street later", could not be punished as fighting words); *Cohen v. California,* 403 US 15, 20, 91 S. Ct. 1780, 29 L. Ed. 2d 284 (1971) (the words "Fuck the Draft" on defendant's jacket did not constitute fighting words). Besides, the "fuck up" does not constitute a true threat under *Virginia v. Black* since the Defendants do not allege that Keerikkattil threatened to fuck up Stacy Sawin by murdering, raping, battering or assaulting Stacy Sawin. Hence the term "fuck up" constitutes protected speech under the First Amendment.

4. Keerikkattil's alleged attempt to interview Andrew Sawin is protected under the First Amendment.

Defendants allege that Keerikkattil stalked Stacy Sawin by attempting to interview Andrew Sawin, Ms. Sawin's father in Lake Oswego, Oregon. However, the Defendants do not allege that Keerikkattil threatened Mr. Sawin in any form. Instead,

they allege that by merely attempting to interview Andrew Sawin, Keerikkattil stalked Stacy Sawin.

Andrew Sawin had a major role in causing Keerikkattil's unlawful termination. Upon receipt of the Cease and Desist Letter from Keerikkattil on May 30, 2015 (Ex. D), Stacy Sawin immediately contacts Andrew Sawin for assistance. In fact, Ms. Sawin herself admits that she contacted Mr. Sawin (Ex. E at 5). Mr. Sawin aided and abetted Ms. Sawin conduct between May 30, 2015 and June 19, 2015 which led to Keerikkattil's unlawful termination from Deloitte on June 19, 2015. Hence, Keerikkattil had a legitimate reason to investigate Mr. Sawin's role relating to his unlawful termination and in bringing tort claims against him if warranted.

Any doubts regarding Keerikkattil's motive can be inferred from the following text messages obtained from the Government as part of the discovery, that were allegedly sent from Keerikkattil to Sawin:

> "Was nice meeting your dad today. I just had a couple of questions for him but he started yelling profanity. So I'll get the answers through a private investigator. No worries. Just gave him a smile not that I didn't know how to respond in kind."

Based on the contents of the above text messages, it is clear that Keerikkattil allegedly wanted to ask Mr. Sawin questions relating to his interactions with Ms. Sawin just prior to his unlawful termination from Deloitte. Mr. Sawin became angry and started yelling profanities at Keerikkattil. Keerikkattil decided not to behave in a demeaning way like Mr. Sawin and walked away and decided to conduct his investigation through a private investigator.

Defendants have provided no evidence that Keerikkattil uttered any "fighting words" or "true threats" that is unprotected under the First Amendment. Rather, the Defendants attempt to criminalize one occurrence of harmless speech that allegedly occurred in Oregon under District of Columbia's stalking law.

## II. Defendants failed to provide any evidence that the alleged stalking course of conduct occurred within the District of Columbia

The concept of venue - that a criminal prosecution should be maintained in a jurisdiction with some relationship to the events alleged in the case - is embodied in the U.S. Constitution, which provides that the "[t]rial of all Crimes ... shall be held in the State where the said Crimes shall have been committed." *See* Art. III, Section 2, cl. 3. The Sixth Amendment also specifically directs that criminal trials shall be held before an impartial jury "of the State and district wherein the crime shall have been committed." *United States v. Cabrales,* 524 US 1, 6, 118 S. Ct. 1772, 141 L. Ed. 2d 1 (1998).

In order to prosecute Keerikkattil under D.C. Code § 22-3133, the incidents that form the basis of Defendants' stalking charge should have occurred within the District of Columbia. Defendants have provided no evidence that the above incidents occurred within the District of Columbia. If the alleged incidents occurred in Virginia, Keerikkattil can only be prosecuted under Virginia's stalking laws.

If the above alleged incidents occurred between states, Federal law applies and District of Columbia does not have the jurisdiction to prosecute alleged violations of interstate stalking. The Supremacy Clause provides a clear rule that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any

Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2. Under this principle, Congress has the power to preempt state law. *See Crosby* v. *National Foreign Trade Council*, 530 U.S. 363, 372, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000); *Gibbons* v. *Ogden*, 22 U.S. 1, 9 Wheat. 1, 210-211, 6 L. Ed. 23 (1824). States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance. *See Gade* v. *National Solid Wastes Management Ass'n,* 505 U.S. 88, 115, 112 S. Ct. 2374, 120 L. Ed. 2d 73 (1992). Congress, acting within its authority, has in fact regulated interstate stalking by passing 18 U.S. Code § 2261A. Since under the Supremacy Clause the Federal law preempts DC's law, DC has no jurisdiction to prosecute alleged stalking conduct over state lines.

In sum, Defendants not only have prosecuted Keerikkattil for protected First Amendment speech but they also have failed to provide any evidence that the alleged stalking conduct occurred within the District of Columbia.

## III. District of Columbia' s unconstitutionally vague and overbroad stalking statute violated Keerikkattil's rights under the First Amendment and Due Process Clause of the Fifth Amendment

The Due Process Clause of the Fifth Amendment (U.S. Const. amend. V) requires that any statute that imposes criminal liability must give potential defendants fair warning of what conduct is proscribed. *City of Chicago v. Morales*, 527 US 41, 52, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999). Criminal liability cannot be imposed without "fair warning . . . in language that the common world will understand of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *United States v. Lanier*, 520 US 259, 265, 117 S. Ct. 1219, 137 L. Ed.

2d 432 (1997)(quoting *McBoyle v. United States*, 283 US 25, 27, 51 S. Ct. 340, 75 L. Ed. 816 (1931)).

As the Supreme Court has explained, the Due Process Clause requires that a criminal statute define an offense: "'(1) with sufficient definiteness that ordinary people can understand what conduct is prohibited [;] and (2) in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Skilling v. United States*, 130 S. Ct. 2896, 2927-28, 561 US 358, 177 L. Ed. 2d 619 (2010) (quoting *Kolender v. Lawson*, 461 US 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983)). A law that fails to do either is impermissibly vague. *Morales*, 527 U.S. at 56 (citation omitted). "The general test of vagueness applies with particular force in review of laws dealing with speech." *Hynes v. Mayor and Council of Borough of Oradell*, 426 U.S. 610, 620 (1976) (observing that "[s]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech")(citations omitted). *See also Dombrowski v. Pfister*, 380 U.S. 479, 494, 14 L. Ed. 2d 22, 85 S. Ct. 1116 (1965) (overly broad and vague statute restricting speech creates a "danger zone within which protected expression may be inhibited" (quotations omitted)).

1. The portion of D.C. Code § 22-3133 charged does not provide Keerikkattil with fair notice of what conduct is prohibited.

As noted before, the Defendants allege that Keerikkattil committed a violation of D.C. Code § 22-3133 with an "intent to alarm, disturb" Stacy Sawin and cause her "emotional distress".

Key terms such as "intent to alarm, disturb" and "emotional distress" are not clearly defined. The failure to define the key terms involved in this case is fatal to the statute. *Coates v. City of Cincinnati*, 402 US 611, 614, 91 S. Ct. 1686, 29 L. Ed. 2d 214

(1971)(invalidating city ordinance on vagueness grounds and observing that "the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensive normative standard, but rather in the sense that no standard of conduct is specified at all"). What causes "emotional distress" to one person may not cause any emotional distress to another. There is no quantifiable measure of emotional distress in the statute.

Similarly, what one person views as alarming or disturbing (political jokes, chain letters) may be amusing to another. Applying the standard set forth by the Supreme Court, individuals of ordinary intelligence must necessarily guess at the meaning of these undefined and standardless statutory terms. Because it is simply impossible for ordinary people to understand what conduct is prohibited under the statute charged by the Government in this case, let alone lawyers to understand how to advise others about what is criminal and what is lawful, the portion of the statute charged in the Information in Superior Court should be voided on vagueness grounds. *See Doe v. University of Michigan*, 721 F. Supp. 852 (E.D. Mich. 1989)(striking down University of Michigan harassment policy on both vagueness and overbreadth grounds); *State v. Bryan*, 910 P.2d 212, 220 (Kan. 1996)(striking down stalking statute on vagueness grounds because terms such as "harass" were undefined and lacked any objective standard to measure the proscribed conduct); *Vives v. City of New York*, 305 F.Supp.2d 289, 302 nn. 8, 9 (S.D.N.Y. 2003) (finding Penal Law § 240.30(1) unconstitutionally overbroad on its face "to the extent it prohibits and punishes speech that is intended to 'annoy' and/or 'alarm'"), rev'd on other grounds, 405 F.3d 115 (2d Cir. 2004).

14

2. The portion of § D.C. Code § 22-3133 charged by Defendants fail to establish standards that are sufficient to guard against arbitrary enforcement.

Lacking clear (or any) standards for determining what conduct is lawful and what conduct is unlawful, the portions of statute at issue here are particularly susceptible to arbitrary enforcement. While prosecutorial discretion always accounts for some variation in enforcement, this discretion is reined in by the presence of clear, precise standards to guide law enforcement and prosecutors. In the absence of these standards, controversial or unsavory speech (or speakers) may be targeted by law enforcement or prosecutors. Given the "standardless sweep" that results from undefined laws, "law enforcement entities would be improperly free to pursue their personal predilections." *Kolendar*, 461 U.S. at 358 (citation omitted). The absence of even minimal guidelines to govern the enforcement of D.C. Code § 22-3133 requires that it be invalidated on vagueness grounds.

In addition, the rule of lenity requires that any ambiguity in a criminal statute be resolved in Keerikkattil's behalf. *Abbott v. United States,* 562 US 8, 178 L. Ed. 2d 348, 131 S.Ct. 18, 31 n. 9 (2010). The ambiguities in the portion of D.C. Code § 22-3133 are legion. Resolving them in favor of Keerikkattil requires the Court to dismiss the Information in Superior Court and enjoin Defendants from future enforcement.

## IV. The Court should issue a preliminary injunction enjoining the Defendants from enforcing D.C. Code § 22-3133 against Keerikkattil

1. Keerikkattil satisfies the requirements for the issuance of a preliminary injunction

A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an

injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014); *See also Winter v. Natural Resources Defense Council*, 555 US 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). As stated below, Keerikkattil has made the requisite showing for issuance of the requested preliminary injunction.

### A. Keerikkattil is likely to succeed on the merits

As explained in detail above, Keerikkattil is being criminally prosecuted for exercising his First Amendment rights that includes e-mails to his former colleagues at Deloitte, serving a notice of litigating on Stacy Sawin and interviewing witnesses who have discoverable knowledge relating to his unlawful termination from Deloitte. There were no "fighting words" or "true threats" directed at Stacy Sawin or any other individual. There is no doubt that Keerikkattil would prevail on his First Amendment violation claim at trial.

In addition, Keerikkattil is prosecuted under D.C. Code § 22-3133, an unconstitutionally vague and overbroad statute that criminalizes any "intent to alarm or disturb" or cause "emotional distress". D.C. Code § 22-3133 bears striking similarity to New York's aggravated harassment statute that was invalidated by the New York Court of Appeals in 2014. New York's Penal Law § 240.30(1)(a) provides that "[a] person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she . . . communicates with a person, anonymously or otherwise, by telephone, by telegraph, or by mail, or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm." The Court in *People v Golb,* 23 NY3d 455, 466-467, explicitly stated that Penal Law § 240.30(1)(a), which prohibited a person from engaging in

communication "in a manner likely to cause annoyance or alarm," is unconstitutionally vague and overbroad. Three federal judges have also found the statute unconstitutional *See Vives v. the City of New York*, (SD N.Y.2003, Scheindlin, J.) ("where speech is regulated or proscribed based on its content, the scope of the effected speech must be clearly defined"); *see also Vives* 405 F.3d 115, 123–124 (2d Cir 2004, Cardamone, J., dissenting in part, concurring in part) (Penal Law § 240.30(1) unconstitutional on its face and as applied]; *Schlager v. Phillips* [SD N.Y.1987, Brieant, J.) (statute is "utterly repugnant to the First Amendment of the United States Constitution and also unconstitutional for vagueness"). Hence Keerikkattil has a very high probability on succeeding on merits of void for vagueness doctrine under the Due Process Clause of the Fifth Amendment as well.

### B. Keerikkattil will suffer irreparable harm if the injunction is not granted.

It is well settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" justifying the grant of preliminary injunction. *Elrod v. Burns*, 427 US 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976); *See also Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("[A]n alleged constitutional infringement will often alone constitute irreparable harm."); *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001)(court assumes irreparable injury where deprivation of speech rights). 11A Wright & Miller, Fed. Prac. & Proc. § 2948.1 (2d ed. 2004) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). For purposes of injunctive relief, an injury is also "irreparable" if it cannot be undone through monetary remedies. *RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1210 (10th

Cir.2009) ("A plaintiff satisfies the irreparable harm requirement by showing a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.").

There is no doubt that Keerikkattil will suffer loss of First Amendment freedoms causing irreparable injury if the Court does not issue a preliminary injunction. *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (" '[S]uits for declaratory and injunctive relief against the threatened invasion of a constitutional right do not ordinarily require proof of any injury other than the threatened constitutional deprivation itself.' "). In addition, the irreparable harm that Keerikkattil would suffer cannot be compensated by monetary damages. Most notable, the Defendants could arrest and imprison him for exercising his First Amendment right. In addition, Keerikkattil will suffer irreparable injury from loss of both personal and professional reputation if the Court does not issue a preliminary injunction. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196 (3d Cir. 1990) ("Potential damage to reputation constitutes irreparable injury for the purpose of granting a preliminary injunction").

*C. The Balance of Equities Tip Heavily in Favor of Granting the Requested Relief.*

As outlined above, Keerikkattil would likely suffer irreparable injury in the absence of an injunction. By contrast, the impact of an injunction on the Defendants is minimal or nonexistent. A threatened injury to Plaintiffs' constitutionally protected speech will usually outweigh the harm, if any, the defendants may incur from being unable to enforce what is in all likelihood an unconstitutional statute. Besides, Keerikkattil is only seeking a narrowly tailored injunction enjoining the application of D.C. Code § 22-3133 by the Defendants on him – a non-resident of D.C., who is

threatened with criminal prosecution for exercising First Amendment conduct that allegedly occurred outside the jurisdictional boundary of D.C. The injunction does not impact any other individual or any other case. Hence the balance of equities tips heavily in favor of Keerikkattil for granting injunctive relief.

### D. Granting the Preliminary Injunction is in the Public Interest.

Clearly, "[t]he First Amendment, in particular, serves significant societal interests." *First National Bank of Boston v. Bellotti*, 435 US 765, 766, 98 S. Ct. 1407, 55 L. Ed. 2d 707 (1978); *see also Elam Constr. v. Reg. Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir.1997)("The public interest...favors plaintiffs' assertion of their First Amendment rights."). The public has a significant interest in ensuring that citizens are not criminally prosecuted for exercising their clearly established First Amendment Rights. This injunction does exactly that and hence is in the public interest.

## V. *Younger* Abstention does not restrict the Court's authority to issue a Preliminary Injunction

The pendency of a state-court action generally does not preclude a federal court from addressing the same subject matter. *Co. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). This is consistent with the tenet that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Id. Nevertheless, this obligation is not absolute -- and the Supreme Court has developed a small cluster of doctrines that either require or allow federal courts to defer to state proceedings in particular circumstances. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716-18, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996). Younger abstention reflects one such doctrine.

In *Younger*, the Supreme Court held that principles of equity and comity demand that a federal court abstain from entertaining a suit that seeks to enjoin a state criminal prosecution as violative of federal law so long as the state proceeding affords an adequate opportunity to raise the federal defense and abstention will not cause irreparable harm. *Younger v. Harris*, 401 US 37, 43-46, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

Over the years, the Court has recognized a handful of exceptions to the Younger doctrine. Abstention is inappropriate, for example, when a state proceeding is brought in bad faith, that is, for the purpose of harassment. *Younger*, 401 U.S. at 53-54. So, too, a federal court need not stay its hand if the state forum provides inadequate protection of federal rights. *Gibson v. Berryhill*, 411 U.S. 564, 575, 578-79, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973). Abstention is likewise inappropriate when a state statute is "flagrantly and patently violative of express constitutional prohibitions." *Younger*, 401 U.S. at 53 (quoting *Watson v. Buck*, 313 U.S. 387, 402, 61 S. Ct. 962, 85 L. Ed. 1416 (1941)). In addition, the State or both parties can waive *Younger* abstention. the State or both parties waive *Younger* abstention. *Ohio Bureau of Emp't Servs. v. Hodory*, 431 US 471, 479–80 , 97 S. Ct. 1898, 52 L. Ed. 2d 513 (1977). Each of these exceptions constitutes independent bases for departing from the *Younger* rule.

Younger Abstention does not apply to the majority of injunctive relief sought by Keerikkattil that includes:

1. Enjoining Defendants from arresting and/or prosecuting the Plaintiff under D.C. Code § 22-3133 for protected First Amendment speech including but not limited to (i) internet postings (ii) e-mails and (iii) text messages.

2. Enjoining Defendants from arresting and/or prosecuting the Plaintiff under D.C. Code § 22-3133 for filing any lawsuit against Stacy Sawin in any Court.

20

3. Enjoining Defendants from arresting and/or prosecuting the Plaintiff under D.C. Code § 22-3133 for petitioning any government agency relating to Stacy Sawin.

There are currently no pending state proceedings that address the above-mentioned relief. The only injunctive relief sought by Keerikkattil that could potentially implicate *Younger* is his request for an order enjoining 2015-CMD-017652, the misdemeanor proceeding in DC Superior Court.

## 1. Bad Faith and Harassment Exception to *Younger*

In *Younger*, the Court stated that federal courts need not abstain if asked to enjoin a prosecution that is brought to harass and in bad faith. *Younger v. Harris*, 401 U.S. 37, 47–49 (1971). This exception, as applied, is not actually an exception at all but a straightforward application of the equity and comity principles enunciated in *Younger*.

An injunction against prosecutions in bad faith and with intent to harass is consonant with the general equitable principles requiring irreparable harm, the parties' good faith, and the absence of an adequate remedy at law. A prosecution commenced to harass a defendant is an irreparable injury because once a criminal charge has been publicly levied, the harm that the charge alone causes cannot be compensated for by damages.

Defendants initiated Keerikkattil's prosecution knowing very well that Stacy Sawin had alterior motives in filing a false Police Report against him. Defendants are also very well aware that they are prosecuting Keerikkattil's protected speech under the First Amendment. Still they continue Keerikkattil's prosecution on frivolous grounds

with the intent to harass him and in bad faith. Hence the Bad Faith and Harassment Exceptions to *Younger* apply.

2. Patently Unconstitutional Statutes Exception to *Younger*

The next exception to *Younger* abstention is the presence of a patently unconstitutional law. D.C. Code § 22-3133 is patently unconstitutional since it criminalizes any "intent to alarm or disturb" or cause "emotional distress". D.C. Code § 22-3133 bears striking similarity to New York's aggravated harassment statute that was invalidated by the New York Court of Appeals in 2014. The Court in *People v Golb,* 23 NY3d 455, 466-467, explicitly stated that Penal Law § 240.30(1)(a), which prohibited a person from engaging in communication "in a manner likely to cause annoyance or alarm," is unconstitutionally vague and overbroad. Other states have also ruled statutes similar in wording to D.C. Code § 22-3133 as unconstitutionally vague. *See e.g., State v. Bryan*, 910 P.2d 212, 220 (Kan. 1996)(striking down stalking statute on vagueness grounds because terms such as "harass" were undefined and lacked any objective standard to measure the proscribed conduct). Hence, D.C. Code § 22-3133 is a patently unconstitutional statute that mandates a *Younger* exception.

3. Inadequate State Forum Exception to *Younger*

The third exception to *Younger* abstention is the lack of an adequate state forum. A forum is not adequate if it is biased or a party is barred on procedural or other grounds from raising its federal claims, even if the highest state court has upheld the constitutionality of the law or practice at issue. *Younger*, 401 U.S. at 45 (requiring abstention unless the state forum would not provide adequate protection); *see also*

*Gibson v. Berryhill*, 411 U.S. 564, 575–78 (1973) (holding that the bias of the state tribunal was sufficient to overcome *Younger* abstention).

The misdemeanor prosecution of Keerikkattil in DC Superior Court does not offer an adequate state forum to raise his constitutional claims. Had Keerikkattil been charged with 18 U.S. Code § 2261A, D.C. Code § 22-3133's federal progeny in federal court, he could have easy dismissed Defendant's frivolous charge by filing a pre-trial motion to dismiss. A motion that the indictment fails to state an offense may be made pretrial or at any time during the pendency of the case. Fed. Rule of Crim. P. 12(b)(2), (3)(B). "It is perfectly proper, and in fact mandated, that the district court dismiss an indictment if the indictment fails to allege facts with constitute a prosecutable offense. *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983). The Superior Court Rules of Criminal Procedure ("SCR-Crim.) do not authorize a pre-trial motion to dismiss the information, unlike Fed. Rule of Crim. P. 12(b), on the premise that Defendants' charges violate Keerikkattil's First and Fifth Amendment Rights. Hence, DC Superior Court does not provide an adequate state forum for Keerikkattil to raise his federal and constitutional claims.

For the reasons stated above, this Court's authority to enjoin the misdemeanor proceeding against Keerikkattil in DC Superior Court is not restricted under the Bad Faith and Harassment, Patently Unconstitutional Statutes and/or Inadequate State Forum exceptions under Younger[1].

---

[1] The waiver exception to *Younger* is not analyzed since neither District of Columbia nor Defendants have consented to a *Younger* waiver.

## CONCLUSION

For the foregoing reasons, Plaintiff Ranjith Keerikkattil respectfully requests that the Court issue a preliminary injunction:

1. Enjoining Defendants from arresting and prosecuting the Plaintiff under D.C. Code § 22-3133 for protected First Amendment speech including but not limited to (i) internet postings (ii) e-mails and (iii) text messages.

2. Enjoining Defendants from arresting and prosecuting the Plaintiff under D.C. Code § 22-3133 for filing any lawsuit against Stacy Sawin in any Court.

3. Enjoining Defendants from arresting and prosecuting the Plaintiff under D.C. Code § 22-3133 for petitioning any government agency relating to Stacy Sawin.

4. Enjoining Defendants' misdemeanor prosecution of Plaintiff in DC Superior Court (2015-CMD-017652).

Dated: May 18, 2016                    Respectfully submitted,

Ranjith Keerikkattil
4707 Grand Bend Drive
Catonsville, MD 21228
rkeerikkattil@gmail.com
Tel: (443) 690-1031

24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RANJITH KEERIKKATTIL              )
                                  )
         Plaintiff,               )
                                  )
    v.                            )          Case No. 16-CV-00857-RBW
                                  )
RAYMOND STARGEL, et al.,          )
                                  )
         Defendants.              )
_____

### [PROPOSED] ORDER

Upon consideration of Plaintiff's Motion for Preliminary Injunction, and any opposition thereto, it is hereby ORDERED that Defendants, its officers, agents, affiliates, servants, employees, assigns, those persons in active concert or participation with Defendants, and all other persons within the scope of Federal Rule of Civil Procedure 65 are enjoined from:

1. Arresting and prosecuting the Plaintiff under D.C. Code § 22-3133 for protected First Amendment speech including but not limited to (i) internet postings (ii) e-mails and (iii) text messages.

2. Arresting and prosecuting the Plaintiff under D.C. Code § 22-3133 for filing any lawsuit against Stacy Sawin in any Court.

3. Arresting and prosecuting the Plaintiff under D.C. Code § 22-3133 for petitioning any government agency relating to Stacy Sawin.

4. Continuing Defendants' misdemeanor prosecution of Plaintiff in DC Superior Court (2015-CMD-017652).

IT IS SO ORDERED.

Dated this _____ day of _____, 2016.

_____

THE HONORABLE REGGIE B. WALTON
UNITED STATES DISTRICT JUDGE